**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>BRANDON WHITE,<br><br>　　　　　　Defendant. | Case No. 2:15–cr–29–GMN–VCF<br><br>**REPORT & RECOMMENDATION**<br><br>MOTION TO SUPPRESS (#36) |

This matter involves the United States' prosecution of Brandon White for carjacking and brandishing a firearm during a crime of violence. *See* (Indict. #1[1]). Before the court is Mr. White's Motion to Suppress (#36). For the reasons stated below, Mr. White's Motion to Suppress should be denied.

### I. BACKGROUND

A man and a woman were standing in the parking lot of the Fortune Hotel on East Flamingo Road when someone "approached them from behind and robbed them." (Def.'s Mot. (#36) at 2:5–6). The person had a gun. He ordered the couple to "throw their possessions on the ground, including [their] cell phones and keys." (*Id.* at 2:10–11). The couple complied; the person took their belongings; and the couple fled into their hotel room and called the police. (Mins. Proceeding #53).

When the police arrived, the couple explained what had happened, learned that their car had been stolen, and stated that the robber had been wearing a grey hooded sweatshirt and whitewashed jeans. (*Id.*) A police officer let the woman use a find-my-phone application on the police officer's phone. (Doc. #42 at 2:17). She entered her credentials and the police received a GPS signal with the location of her stolen

---

[1] Parenthetical citations refer to the court's docket.

1

phone. *See* (*id.*) The phone was near the intersection of Rancho Destino and Robindale. (*Id.* at 2:19).

The stolen car was soon discovered and suspect who matched the description provided by the couple was found nearby.[2] The police brought the couple to the scene and provided each of them with a "Show-Up Witness" form, which stated:

> In a moment, I am going to show you a person who is being detained. This person may or may not be a person who committed the crime now being investigated. The fact that this person is detained should not cause you to believe or guess that he/she is guilty. You do not have to identify anyone. It is just as important to free innocent person from suspicion as it is to identify those who are guilty. Please keep in mind that clothing can be easily changed. Please do not talk to anyone other than police officers while viewing this person. You must make up your own mind and not be influenced by other witnesses, if any. When you have viewed the person, please tell me whether or not you can make identification. If you can, tell me in your own words how sure you are of your identification. Please do not indicate in any way to other witnesses that you have or have not made an identification. Thank you.

(Doc. #42-1 at 2).

The man was presented with the suspect and wrote on the form, "[g]rey sweatshirt, jeans, and shoes are a match for what the suspect was wearing when he held me and my girlfriend at gunpoint and took my possessions. When at gunpoint, the suspect's face and head were completely covered, so I am unable to say anything about a match relative to the suspect's face or head. Height and build are a match to the suspect." (*Id.* at 3). The woman was presented with the suspect and wrote on the form, "[t]he subject was wearing the same gray hoodie and jeans when he carjacked/robbed us at gunpoint. I am 100% positive." (*Id.* at 2).

The suspect was later identified as Brandon White and indicted for carjacking and brandishing a firearm during a crime of violence. Now, Mr. White moves to suppress the couple's identifications, arguing that the process was "overly suggestive." (Doc. #36 at 3:26).

---

[2] There is no evidence that the suspect was located because of the find-my-phone application.

## II. LEGAL STANDARD

"To constitute a due process violation, the photographic identification procedure must be so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Denham v. Deeds*, 954 F.2d 1501, 1504 (9th Cir. 1992) (citing *Simmons v. United States*, 390 U.S. 377, 384, (1968)). The court engages in a two-step inquiry when determining whether an identification procedure violated a suspect's due-process rights. *United States v. Love*, 746 F.2d 477, 478 (9th Cir. 1984).

"First, it must be determined whether the procedures used were impermissibly suggestive." *Id.*; *Simmons*, 390 U.S. 377, 384; *Stovall v. Denno*, 388 U.S. 293, 301–02 (1967). A show-up at the scene of the crime with one suspect in handcuffs is not so impermissibly suggestive as to give rise to a substantial likelihood of mistaken identification. *United States v. Kessler*, 692 F.2d 584, 585 (9th Cir. 1982) (Kennedy, J.); *United States v. Jones*, 84 F.3d 1206, 1210 (9th Cir. 1996) ("The fact that only one suspect is presented for identification does not make the identification procedure invalid."). If the identification procedure is not impermissibly suggestive, the court's inquiry ends at the first step. *See United States v. Davenport*, 753 F.2d 1460, 1463 and n. 2 (9th Cir. 1985); *Love*, 746 F.2d at 478.

Second, the court must determine "whether the identification was nonetheless reliable." *Love*, 746 F.2d at 478. The court determines reliability by examining five factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972); *Kessler*, 692 F.2d at 586. If the identification is sufficiently reliable, identification testimony may properly be allowed into evidence even if the identification was made pursuant to an unnecessarily suggestive procedure. *See id.*

### III. DISCUSSION

Mr. White's Motion to Suppress should be denied. He contends that the police employed an impermissibly suggestive identification procedure because he was alone in the lineup when he was identified by the couple. This argument fails as a matter of law. A show-up at the scene of the crime with one suspect in handcuffs is not so impermissibly suggestive as to give rise to a substantial likelihood of mistaken identification. *Kessler*, 692 F.2d at 585 (Kennedy, J.); *Jones*, 84 F.3d at 1210 ("The fact that only one suspect is presented for identification does not make the identification procedure invalid.").

Nor does the fact that Mr. White was in custody at the time of the identification render the procedure invalid. *Jones*, 84 F.3d at 1209–10 (upholding show-up of defendant standing by side of road near police officers who were holding robber[s wig, hat and sunglasses); *United States v. Bagley*, 772 F.2d 482, 493 (9th Cir. 1985) (upholding identification at show-up where defendant was seated in police car, handcuffed and surrounded by police).

During the court's evidentiary hearing, both victims offered highly credible testimony showing that they were not influenced to identify Mr. White as the suspect because Mr. White was wearing handcuffs and the only person at the show up. *See* (Mins. Proceedings #53). The male victim specifically testified that, in his personal view, it was more important for him to identify the right person rather than whoever the police presented to them. *See* (*id.*)

The court also finds that the government employed procedures that prevented the victims from unduly influence each other. Both victims testified that Metro drove them to the scene of the show-up separately. (*Id.*) Both victims also testified that the police officers did not attempt to persuade them to identify Mr. White as the suspect of even discuss the matter. (*Id.*) Both victims viewed Mr. White separately and did not have an opportunity to share their impressions. (*Id.*) This procedure does not offend due process.

4

Because the court finds that the procedure was not "so impermissibly suggestive as to give rise to a substantial likelihood of mistaken identification," the court's inquiry ends and Mr. White's Motion to Suppress should be denied. *See Davenport*, 753 F.at 1463 & n. 2; *Love*, 746 F.2d at 478. Nonetheless, the court also recommends denying Mr. White's motion because the five reliability factors demonstrate that the couple's identification was reliable.

First, the victims had a reasonable opportunity to view the assailant at the time of the crime. During the evidentiary hearing, they testified that they were particularly focused on the suspect's whitewashed jeans, torso, shoes, and gun. (Mins. Proceedings #53). Mr. White contends that victims' opportunity to view the assailant was inadequate because he appeared as a silhouette, wore a black scarf or bandana over his mouth, and covered his face with his hood. *See* (*id*.) The court disagrees. The victims' lack of an opportunity to view the assailant's face does not detract from their opportunity to view his whitewashed jeans, torso, shoes, and gun, which formed the basis of their description of the assailant.

Second, the victims' credibly testified that they exercised a high degree of attention when they were robbed. *See* (*id*.) Both stated that the presence of the gun heightened their attention and drew their focus to the gun and the assailant's whitewashed jeans, torso, and shoes. (*Id*.). The court finds that this factor weighs in the government's favor.

Third, the court finds that the victims' prior descriptions of the assailant is substantially accurate. The female victim testified that she was "100% positive" that the clothing matched. (*Id*.) The male victim also stated that the clothing was "a match." (*Id*.) Both victims' prior description of the clothing accurately reflected what Mr. White was wearing when he was apprehended: whitewashed jeans, a grey hooded sweatshirt, and black shoes. (*Id*.) These facts corroborate the victims' testimony that they were primarily focused on the assailants' clothing at the time of the crime.

Mr. White contends that this factor weighs in his favor because the male victim misidentified Mr. White's race, both victims misidentified the color of the gun, and neither victim noticed that the suspect's shoes and sweatshirt were laced with neon green. The court is unpersuaded. The male victim's misidentification of Mr. White's race is reasonable. Both victims testified that the suspect appeared as a silhouette at the time of the crime because the nearest light was behind his back. (*Id*.). They also testified that the suspect's sweatshirt covered his hands, forehead, and eyes and that a black scarf or bandana covered his mouth. (*Id*.)

The victims' misidentification of the color of the gun is also reasonable. During the court's evidentiary hearing, a detective from the Las Vegas Metropolitan Police Department testified that the revolver that was found near Mr. White when he was apprehended was black and had a glossy finish. (*Id*.) He also testified that in his training and experience, a black revolved with a glossy finish may appear silver under certain lighting conditions. (*Id*.)

The court is similarly unpersuaded that the third factor weighs in Mr. White's favor because neither victim noticed that the suspect's shoes and sweatshirt contained neon green. It is not necessary for a victim to recall every detail about a suspect for a court to conclude that an identification is reliable. The fact that the victims failed to observe the green trim does not detract from the reliability of what they did observe: the assailant's whitewashed jeans, gray sweatshirt, black shoes, and the silver sheen created by the black revolver's glossy finish. The court, therefore finds that the third factor weighs in the government's favor.

The final two factors—(*viz*., the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation)—also weigh in the government's favor. The male victim stated that Mr. White's clothing was "a match" and the female victim stated that she was "100% positive" that his clothing matched what the suspect was wearing. The length of time between the alleged crime and the identification was less than two hours. The alleged crime occurred at approximately

12:00 a.m., *see* (Doc. #45-1 at 2–4), and Mr. White was arrested at approximately 1:20 a.m., *see* (Doc. #42-1 at 2–3).

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Mr. White's Motion to Suppress (#36) be DENIED.

IT IS SO RECOMMENDED.

DATED this 1st day of October, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE